In the

# United States Court of Appeals

### For the Seventh Circuit

No. 21-2459

CIRCLE BLOCK PARTNERS, LLC and
CIRCLE BLOCK HOTEL, LLC,

*Plaintiffs-Appellants*,

*v.*

FIREMAN'S FUND INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-02512-JPH-MJD — **James Patrick Hanlon**, *Judge*.

ARGUED JANUARY 14, 2022 — DECIDED AUGUST 17, 2022

Before MANION, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This appeal involves another business insurance coverage dispute arising out of the COVID-19 pandemic. In previous cases, we have concluded under Illinois and Michigan law that businesses forced to shut down or reduce operations during the pandemic failed to allege "direct physical loss" or "direct physical damage" to property. E.g., *Paradigm Care & Enrichment Center, LLC v. West*

*Bend Mutual Insurance Co.*, 33 F.4th 417 (7th Cir. 2022) (Illinois and Michigan law); *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327 (7th Cir. 2021) (Illinois law). Here, we reach the same conclusion under Indiana law, in accord with the only Indiana appellate opinion directly on point. See *Indiana Repertory Theatre v. Cincinnati Casualty Co.*, 180 N.E.3d 403 (Ind. App. 2022), transfer denied, 2022 WL 3021434 (Ind. July 19, 2022). We also agree with the district court that any attempt to amend the complaint would be futile, so we affirm the district court's decision to dismiss the case with prejudice. Finally, because Indiana courts will have opportunities to address these issues in other cases, and in view of the Indiana Supreme Court's decision to deny transfer in the *Indiana Repertory Theatre* case, we deny the plaintiffs' motion to certify two questions of state law to that court.

I. *Facts and Procedural History*

Plaintiffs Circle Block Partners, LLC and Circle Block Hotel, LLC own and operate the Conrad, a luxury hotel in downtown Indianapolis. The Conrad features over 200 guest rooms, a business center, and spa and fitness facilities. The hotel also hosts weddings and other gatherings.

In early 2020, Circle Block was anticipating a busy spring season at the Conrad, with several high-profile sporting events, conventions, and live performances scheduled to take place nearby. Instead, of course, the COVID-19 pandemic dramatically altered daily life. In March, state and county governments adopted public health measures in response to the spread of COVID-19. Both the state and county prohibited public gatherings of more than fifty people. In addition, an Indiana stay-at-home order restricted travel and mandated the closure of all non-essential businesses. Hotels were

classified as essential businesses "to the extent they are used for lodging and delivery or carryout food services."

As COVID-19 spread and these restrictions went into effect, the Conrad's business quickly dried up. By March 19, only six of the hotel's guest rooms were occupied. A month later, the hotel suspended operations entirely. Circle Block alleges that the Conrad "lost virtually all of its business income during this time." The hotel continued to incur business expenses such as payroll and mortgage costs, along with additional expenses for cleaning and disinfecting the property.

On March 23, Circle Block filed a claim under its commercial property insurance policy with defendant Fireman's Fund Insurance Company. As relevant here, the "all-risk" policy covering the Conrad included business income and extra expense coverage, civil authority coverage, dependent property coverage, communicable disease coverage, and business access coverage. Each of those relevant coverages required "direct physical loss or damage" to property. The policy also included a "mortality and disease" exclusion.

Fireman's Fund denied the claim on September 2, 2020. Circle Block then filed this case against Fireman's Fund in an Indiana state court for breach of contract. Fireman's Fund removed the suit to the Southern District of Indiana and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The district court granted the motion to dismiss. *Circle Block Partners, LLC v. Fireman's Fund Insurance Co.*, No. 20-cv-02512, 2021 WL 3187521 (S.D. Ind. July 27, 2021). The court concluded that Circle Block had not alleged any direct physical loss or damage. A mere loss of use or functionality, the

court said, was not sufficient. Nor were Circle Block's allegations that virus particles had attached to surfaces at the hotel enough to show direct physical loss or damage. Because it would not be possible for Circle Block to cure the pleading deficiencies in an amended complaint, the court dismissed the case with prejudice. This appeal followed.

II.  *Analysis*

We review de novo the district court's dismissal for failure to state a claim. *East Coast Entertainment of Durham, LLC v. Houston Casualty Co.*, 31 F.4th 547, 550 (7th Cir. 2022). At this stage, we accept all well-pleaded allegations as true, and we draw all reasonable inferences in favor of the plaintiff. *Bilek v. Federal Insurance Co.*, 8 F.4th 581, 584 (7th Cir. 2021). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Paradigm Care*, 33 F.4th at 420, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the plaintiff must show "more than a sheer possibility" of liability, this standard "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

This case arises under our diversity jurisdiction, and the parties agree that Indiana law applies. Absent a controlling decision from the Indiana Supreme Court, we do our best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, we may consider decisions from the Indiana Court of Appeals. See *id.*

Under Indiana law, the interpretation of an insurance policy is a legal question that turns on traditional principles of contract interpretation. *Ebert v. Illinois Casualty Co.*, 188 N.E.3d

858, 863–64 (Ind. 2022). A reviewing court must construe the policy as a whole and aim to "harmonize the policy's provisions rather than place them in conflict." *Pelliccia v. Anthem Insurance Cos.*, 90 N.E.3d 1226, 1231 (Ind. App. 2018). If the language of a policy provision is "clear and unambiguous," then that plain meaning controls. *Ebert*, 188 N.E.3d at 864. Where a provision is ambiguous, however, it is construed in favor of the insured. *Id.* Ambiguity exists where "reasonably intelligent policyholders would honestly disagree on the policy language's meaning." *Erie Indemnity Co. v. Estate of Harris*, 99 N.E.3d 625, 630 (Ind. 2018). A term is not rendered ambiguous "by the mere fact that the parties differ as to its meaning." *G&G Oil Co. of Indiana v. Continental Western Insurance Co.*, 165 N.E.3d 82, 87 (Ind. 2021).[1]

---

[1] Circle Block notes correctly that this case must be decided based on Indiana law, noting that there is "no federal general common law." *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Yet principles of Indiana law regarding insurance policy interpretation closely resemble those of Illinois and other states whose law courts have applied in COVID-19 insurance cases. See, e.g., *Stant USA Corp. v. Factory Mutual Insurance Co.*, No. 21-cv-00253, 2022 WL 326493, at *5 (S.D. Ind. Feb. 3, 2022) (citing *Sandy Point Dental* and other decisions based on Illinois law and finding "no principled basis on which to hold that these findings and conclusions under Illinois law do not apply equally to insurance contracts in Indiana"), appeal docketed, No. 22-1336 (7th Cir. Mar. 2, 2022). We have tried to keep minds open to the arguments that Indiana law is different on the specific issues presented here, but we have not been persuaded that it actually is different. See generally *Rock Dental Arkansas PLLC v. Cincinnati Insurance Co.*, No. 21-2919, – F.4th –, 2022 WL 2840490, at *2 (8th Cir. July 21, 2022) (relying on previous decision under different state's law because laws of both states "instruct courts to enforce unambiguous insurance contracts as written and give each term its ordinary meaning"); *East Coast Entertainment*, 31 F.4th at 551 ("The growing national consensus regarding the

A.  *Scope of Coverage*

With those principles in mind, we turn to the policy language at issue. As the district court noted, each policy provision under which Circle Block asserts coverage requires "direct physical loss or damage" to property. *Circle Block*, 2021 WL 3187521, at *2. Just before oral argument in this case, the Indiana Court of Appeals addressed similar language in *Indiana Repertory Theatre v. Cincinnati Casualty Co.*, 180 N.E.3d 403 (Ind. App. 2022). There, the plaintiff was an Indianapolis theater—located just steps away from the Conrad—that had been forced to close temporarily due to the pandemic. The theater filed a claim with its insurer for loss of business income and extra expenses. The insurer denied the claim, explaining that the theater had not suffered "direct physical loss or damage" to property, as required by the insurance policy. The theater sued in Indiana state court, and the trial court granted partial summary judgment for the insurer.

On appeal, the theater argued that it had suffered direct physical loss or damage because it could not use the property to host live performances. The Indiana Court of Appeals rejected that loss-of-use theory. Instead, the court drew guidance from a New York case denying coverage where the policyholder's property "did not suffer any damage or alteration" but "was unusable for its intended purpose because of an outside factor." 180 N.E.3d at 410, citing *Roundabout Theatre Co. v. Continental Casualty Co.*, 302 A.D.2d 1 (N.Y. App. 2002). The court also pointed to a recent COVID-19 insurance case in which the Eighth Circuit denied coverage and held that direct

---

meaning of 'direct physical loss' underscores that this case does not turn on variations in state contract law.").

physical loss or damage requires "some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction." *Id.*, quoting *Oral Surgeons, P.C. v. Cincinnati Insurance Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021). Ultimately, the theater "did not suffer physical loss or physical damage under the language of the Policy because the premises covered … was not destroyed or altered in a physical way that would require restoration or relocation." *Id.*

The same reasoning applies here. We recognize that Circle Block was not able to use the Conrad property as it would have preferred. But as *Indiana Repertory Theatre* and the overwhelming majority of similar cases under other states' law have held, a temporary denial of a plaintiff's preferred use of its property, absent some physical alteration, does not fall within the plain meaning of "direct physical loss or damage." Accord, e.g., *Paradigm Care*, 33 F.4th at 421–22; *Sandy Point Dental*, 20 F.4th at 334–35; *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1358–59 (11th Cir. 2022) (rejecting loss-of-use theory and collecting cases). Because of the Conrad's status as an essential business for certain purposes, it was permitted to remain open to provide lodging and delivery or carryout food services. In other words, the hotel was not rendered "completely uninhabitable by the pandemic." See *Sandy Point Dental*, 20 F.4th at 334.

The "period of restoration" language in the policy reinforces our conclusion, just as it did for the Indiana Court of Appeals. Like the policy in *Indiana Repertory Theatre*, Circle Block's policy provides coverage during the "period of restoration," which ends when the property is "repaired, rebuilt, or replaced" or when business resumes "at a new permanent location." See 180 N.E.3d at 410. Without any "physical

alteration or impact" to the premises, "there can be no period of restoration." *Id.*; accord, e.g., *Sandy Point Dental*, 20 F.4th at 333 ("Without a physical alteration to property, there would be nothing to repair, rebuild, or replace."); *Santo's Italian Café LLC v. Acuity Insurance Co.*, 15 F.4th 398, 403 (6th Cir. 2021) ("What the restaurant needed was an end to the ban on in-person dining, not the repair, rebuilding, or replacement of any of its property."). Like the theater, the Conrad "was not destroyed or altered in a physical way that would require restoration or relocation." *Indiana Repertory Theatre*, 180 N.E.3d at 410.

To avoid these precedents and their reasoning, Circle Block asserts that its complaint satisfies their pleading demand for direct physical loss or damage. Circle Block relies on its allegations that virus particles physically attached to surfaces at the Conrad. In support of that theory, amicus Purdue University also has asserted that the virus "adsorbs" onto surfaces and materially alters them. According to Circle Block, these allegations are sufficient to show that the Conrad was physically altered by the virus.

There are a few problems with this argument. For one, neither *Sandy Point Dental* nor *Indiana Repertory Theatre* said that any imaginable physical alteration is sufficient. The examples of physical alterations in *Sandy Point Dental* included cases involving termites, which are "notorious for chewing through wood and compromising the structural integrity of buildings," and asbestos fiber contamination. 20 F.4th at 333–34. As the district court here explained, conditions like those "generally involve persistent physical contamination that requires repair or replacement, rather than cleaning and disinfecting, to remediate." *Circle Block*, 2021 WL 3187521, at *7; see also

*Indiana Repertory Theatre*, 180 N.E.3d at 410 (upholding denial of coverage because theater building "was not destroyed or altered in a physical way that would require restoration or relocation"). That is not the kind of alteration Circle Block is alleging. Accord, e.g., *East Coast Entertainment*, 31 F.4th at 551 ("The mere presence of the virus on surfaces did not physically alter the property, nor did the existence of airborne particles carrying the virus."); *Unmasked Management, Inc. v. Century-National Insurance Co.*, 514 F. Supp. 3d 1217, 1225–26 (S.D. Cal. 2021) (rejecting theory that presence of virus particles on surface constitutes physical alteration).[2]

Adopting Circle Block's argument would require us to carve out a narrow sliver of circumstances in which a business's COVID-19 insurance claim may proceed. At oral argument, Circle Block acknowledged that its position would effectively be limited to hotels in Indiana, based on both length of exposure and the types of surfaces present in hotels. But many other businesses where employees and patrons may be subject to prolonged exposure—dental offices or restaurants or childcare centers—have draperies, carpeting, and other surfaces like the ones Circle Block identifies. For that matter,

---

[2] Circle Block and amicus Purdue take issue with the district court's reference to "cleaning and disinfecting." They argue that cleaning efforts may be less effective in eradicating the virus than was previously understood. Perhaps so, but that does not undermine the district court's conclusion that the issue is different in kind from one requiring "repair or replacement." *Circle Block*, 2021 WL 3187521, at *7. In fact, Purdue agrees that "[c]leaning helps," even if "it is not a panacea." Whether a reasonable policyholder would understand the policy's restoration language to include a problem typically resolved through cleaning—as opposed to the more extensive remedial measures in cases involving termites or asbestos—is a legal question that the district court was entitled to answer.

we have also rejected other hotels' COVID-19 coverage claims. E.g., *Crescent Plaza Hotel Owner, L.P. v. Zurich American Insurance Co.*, 20 F.4th 303, 308 (7th Cir. 2021); *Bradley Hotel Corp. v. Aspen Specialty Insurance Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). We see no principled distinction for holding that Circle Block can succeed where those plaintiffs did not.

Under the standards set out in *Sandy Point Dental* and *Indiana Repertory Theatre*, which we view as consistent with general principles of Indiana law and which we believe the Indiana Supreme Court would adopt, Circle Block has not alleged direct physical loss or damage to property.

B. *Circle Block's Other Arguments*

Circle Block raises several other arguments specific to its own policy to show that it has suffered "direct physical loss" or "direct physical damage." None are persuasive.

1. *Direct Physical Loss*

First, Circle Block says that the policy provides coverage for "direct physical loss" to three types of *intangible* property. Those three examples are "stock," which includes a policyholder's interest in labor or services; computer data and software; and the value of digital stamps. According to Circle Block, these examples show that "direct physical loss" does not require physical alteration or destruction of property. A contrary reading, Circle Block argues, would make the coverage for those items meaningless.

None of those provisions are rendered ineffective by interpreting "direct physical loss" to require some physical alteration. Covered data and software are "recorded, installed, or stored on media." "Media," in turn, means "the physical materials upon which data or software are recorded, installed, or

stored." If those "physical materials" suffer physical damage or are lost, coverage would presumably be triggered. So too for the value of digital stamps, which are stored on a meter that could be physically altered or destroyed. And the "stock" provision refers to "interest in labor, materials, or services furnished or arranged by you on personal property of others"— property that might suffer a physical alteration.[3]

For each example, it is also possible to imagine "complete dispossession" of the property. Cf. *Sandy Point Dental*, 20 F.4th at 334 (noting that complete dispossession of property is "easily characterized as a 'direct physical loss'"). And even setting all that aside, Circle Block's argument fails for the simple reason that none of these definitions change the plain meaning of "direct physical loss." See *Melcorp, Inc. v. West American Insurance Co.*, 548 F. Supp. 3d 711, 718 (N.D. Ill. 2021) ("It strains credulity to think that an average reader would reject the plain, ordinary meaning of 'physical loss' because that meaning might render inoperative three terms ('labor,' 'services,' and 'use interest') in a lengthy list set forth in a definition elsewhere in the policy."), aff'd mem., No. 21-2448, 2022 WL 2068256 (7th Cir. June 8, 2022).

Next, Circle Block relies on the policy's "concealed damage" exclusion. That exclusion applies to the section of the policy that provides "transit coverage." It excludes any losses "caused by or resulting from … [c]oncealed damage to [property], unless there are visible marks on the container or packing material surrounding the damaged item, evidencing that

---

[3] The Fifth Circuit rejected a similar argument, but in a non-precedential order. *PS Business Management, L.L.C. v. Fireman's Fund Insurance Co.*, No. 21-30723, 2022 WL 2462065, at *2–3 (5th Cir. July 6, 2022).

direct physical loss or damage was caused by or resulting from an external covered cause of loss." Since the "transit coverage" is triggered by direct physical loss or damage, Circle Block reasons, there would be no need for the exclusion if "direct physical loss" required some physical alteration.

In another COVID-19 insurance case, we rejected a similar surplusage argument in the context of an exclusion. See *Crescent Plaza*, 20 F.4th at 310–11. As we explained, "insurance policies often use overlapping provisions to provide greater certainty on the scope of coverages and exclusions." *Id.* at 311; see also, e.g., *Santo's Italian Café*, 15 F.4th at 406 ("It is no overstatement to say that it would not be an insurance contract if it did not come with some surplusage."). Here too, the "concealed damage" exclusion is most logically understood as clarifying that coverage is triggered only by some physical alteration or dispossession of property—not as altering the definition of "direct physical loss."

Finally, Circle Block relies on two decisions interpreting "direct physical loss" under Indiana law, but neither persuades us to change course on these issues. In *Cook v. Allstate Insurance Co.*, No. 48D02-0611-PL-01156, 2007 Ind. Super. LEXIS 32 (Ind. Super. Nov. 30, 2007), a state trial court said that "a physical condition that renders property unsuitable for its intended use constitutes a 'direct physical loss.'" *Id.* at *9. That language was dicta, as the court had already concluded that it was too late for the insurer to raise the defense that there was no direct physical loss. *Id.* at *7–8 & n.1. As the district court here explained, *Cook* also did not cite "any controlling Indiana precedent" to support its loss-of-use theory. *Circle Block*, 2021 WL 3187521, at *5. The loss-of-use theory was also rejected in *Indiana Repertory Theatre*. 180 N.E.3d at 411

(holding that plaintiff's claim for "loss of use of its theatre due to the COVID-19 pandemic was not physical loss or physical damage").

Nor does *Ports of Indiana v. Lexington Insurance Co.*, No. 09-cv-0854, 2011 WL 5523419 (S.D. Ind. Nov. 14, 2011), help Circle Block. That case involved a dock wall that had indisputably suffered some degree of physical damage. In considering whether additional portions of the wall had been damaged, the court looked to functionality. More specifically, the court said that analyzing physical damage involved "determining if there is a quantifiable loss in the property's usefulness or in its function for normal purposes." *Id.* at *10. The court made clear, however, that it was not "conflating usability with physical damage." *Id.* And given the more recent, more relevant, and more authoritative analysis in *Indiana Repertory Theatre*, neither of Circle Block's cited cases is persuasive. Circle Block has failed to allege a direct physical loss.

### 2. *Direct Physical Damage*

Circle Block also argues that it has plausibly alleged "direct physical damage" to property. Circle Block did not make this argument in the district court and discussed it only fleetingly in its briefs here. See *Circle Block*, 2021 WL 3187521, at *3 n.3 ("Circle Block argues only that the 'loss' portion of the 'direct physical loss or damage' clause provides it coverage."). In particular, Circle Block says that "SARS-CoV-2 particles physically altered and damaged the Conrad Hotel by adding material matter (dangerous viral particles) to the surfaces that was not there before."

As discussed above, we are not persuaded that virus particles caused the kind of physical alteration required to trigger

coverage under the plain language of the policy. Setting that problem aside, it is also hard to see how the Conrad was "damaged" by any such alterations. In ordinary parlance, the term "damage" connotes some kind of harm. The fact that "material matter" has been added to hotel surfaces does not mean Circle Block's property has been harmed. Accord, e.g., *Connecticut Children's Medical Center v. Continental Casualty Co.*, No. 21-cv-291, — F. Supp. 3d —, 2022 WL 168786, at *4–5 (D. Conn. Jan. 19, 2022) (collecting cases rejecting theory that presence of virus on surfaces causes "physical damage"), appeal docketed, No. 22-322 (2d Cir. Feb. 17, 2022).

In addition, Circle Block's broad definition would seem to extend coverage to any situation where "material matter" is added to a surface. A sneeze that spreads cold virus particles, for example, would be deemed to have inflicted "direct physical damage." We have a hard time imagining that a reasonably intelligent policyholder would share such an expansive understanding of that phrase. Nor does Circle Block explain how this addition of "material matter" would "require restoration or relocation." See *Indiana Repertory Theatre*, 180 N.E.3d at 410; accord, e.g., *Paradigm Care*, 33 F.4th at 421–22 ("The [plaintiffs] do not assert—nor could they under the plain and unambiguous terms of the policies—that their property was physically altered by the COVID-19 virus, such that it had to be repaired, rebuilt, or replaced."). Circle Block has not alleged direct physical damage to property.[4]

---

[4] Because we conclude that Circle Block has failed to allege direct physical loss or damage to property, we need not decide whether the "mortality and disease" exclusion would bar coverage.

III. *Leave to Amend*

Circle Block argues that it should have been granted leave to amend its complaint to cure any pleading deficiencies. Ordinarily, a plaintiff whose complaint is dismissed under Rule 12(b)(6) "should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). We have said that a court should deny leave to amend "only if it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). While we review a denial of leave to amend for abuse of discretion, assessing futility requires de novo consideration of whether the plaintiff's new theory would be viable. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).

We fail to see how Circle Block could cure the deficiencies in its complaint. In *Sandy Point Dental*, we concluded that the district court's denial of leave to amend was permissible even though the plaintiff had offered specific allegations it wished to add. See 20 F.4th at 335. Here, Circle Block has not proposed any new allegations that would address the problems identified by the district court. See, e.g., *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint."); see also *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1134 (7th Cir. 2022) (affirming denial of leave to amend where plaintiffs "never showed the district court how they thought they could amend their complaint to

cure its deficiencies"). Under these circumstances, the district court did not err by dismissing the case without leave to amend the complaint.

IV. *Motion to Certify*

Finally, Circle Block asks us to certify two questions of state law to the Indiana Supreme Court. The questions proposed by Circle Block are:

> 1. Does the undefined insurance policy term "direct physical loss or damage" require tangible, visible physical alteration or destruction of property under Indiana law?
>
> 2. Does the persistent attachment of invisible—yet physical, dangerous, and harmful—particles to property constitute "direct physical loss or damage" under Indiana law?

Circle Block argues that these questions are not resolved by existing Indiana law and that they control the outcome of this case.

Circuit Rule 52 governs certification of questions of state law. The rule allows for certification to a state's highest court "in accordance with the rules of that court." Cir. R. 52(a). Indiana Rule of Appellate Procedure 64, in turn, provides that a federal court "may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." The decision to certify rests "in the sound discretion of the federal court." *Mckesson v. Doe*, 141 S. Ct. 48, 51 (2020), quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). In exercising that discretion, "the most important

consideration is whether we find ourselves genuinely uncertain about a question of state law that is key to a correct disposition of the case." *In re Hernandez*, 918 F.3d 563, 570 (7th Cir. 2019), quoting *Lyon Financial Services, Inc. v. Illinois Paper & Copier Co.*, 732 F.3d 755, 766 (7th Cir. 2013).

Certification is not warranted here. For the reasons explained above, we do not have any "serious doubt" about how the Indiana Supreme Court would resolve these questions. See *Seekins v. CHEP USA*, 20 F.4th 345, 351 (7th Cir. 2021), quoting *State Farm Mutual Automobile Insurance Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). Nor does Indiana case law send "conflicting signals as to the appropriate answers." *Cutchin v. Robertson*, 986 F.3d 1012, 1015 (7th Cir. 2021). These issues are undoubtedly important to policyholders and insurers, but the Indiana Supreme Court will have opportunities to address them in cases proceeding through the state courts. The Indiana Supreme Court recently decided not to address those issues when it denied transfer in *Indiana Repertory Theatre*. See *Pate*, 275 F.3d at 673 (declining to certify question where Indiana Supreme Court "has had the opportunity to address the question and has not done so"). This is not a case where certification "may be the only way to allow the state courts to resolve an issue of state law." *American Safety Casualty Insurance Co. v. City of Waukegan*, 678 F.3d 475, 481 (7th Cir. 2012).

The judgment of the district court is

AFFIRMED.