In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1336
STANT USA CORP., et al.,
 Plaintiffs-Appellants,
 v.

FACTORY MUTUAL INSURANCE COMPANY,
 Defendant-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Southern District of Indiana, Indianapolis Division.
 No. 1:21-cv-00253-SEB-TAB — Sarah Evans Barker, Judge.
 ____________________

 ARGUED NOVEMBER 1, 2022 — DECIDED MARCH 2, 2023
 ____________________

 Before ROVNER, BRENNAN, and SCUDDER, Circuit Judges.
 ROVNER, Circuit Judge. The plaintiffs, Stant USA Corpora-
tion, Stant Foreign Holding Corporation, and Vapor US Hold-
ing Corporation (collectively “Stant”), filed suit seeking a de-
claratory judgment that they were entitled to recover under a
commercial insurance policy issued by the defendant Factory
Mutual Insurance Company (“FM”). The district court
granted a motion to dismiss by FM, and Stant now appeals
that dismissal.
2 No. 22-1336

 Stant is a manufacturer of products for automobile suppli-
ers and for automobile manufacturers such as Fiat Chrysler,
Ford Motor Company, and General Motors. The products
manufactured by Stant for those customers included vapor
management systems, fuel delivery systems, and thermal
management systems. The spread of COVID-19 in early 2020
and the ensuing government orders curtailing the operation
of non-essential businesses resulted in the suspension or re-
duction in operations by Stant’s customers, and Stant alleged
that it suffered over $5.3 million in derivative financial losses.
 Stant sought to recover under an “all-risk” insurance pol-
icy sold by FM to Stant’s ultimate parent company, insuring
Stant for the period from May 1, 2019 to May 1, 2020. Under
the Contingent Time Element coverage in that policy, Stant
argues it was entitled to coverage for lost income as a result
of “physical loss or damage” at its customers’ properties.
Stant contends that the COVID-19 virus caused such “physi-
cal loss or damage” to its customers’ properties, and that its
resulting business interruption losses were covered under the
policy.
 We review de novo the district court’s grant of the motion
to dismiss under Federal Rule of Civil Procedure 12(b)(6). Cir-
cle Block Partners, LLC v. Fireman’s Fund Insurance Company, 44
F.4th 1014, 1018 (7th Cir. 2022). This case arises under our di-
versity jurisdiction, and all parties agree that Indiana law ap-
plies. The interpretation of an insurance policy under Indiana
law is a legal question determined under traditional princi-
ples of contract interpretation. Id.
 We turn first to the language of the policy at issue. The
policy, in relevant part, covers property against “all risks of
physical loss or damage, except as hereinafter excluded.”
No. 22-1336 3

Stant does not argue that its own property sustained any
physical loss or damage. Instead, it argues that other policy
provisions cover the loss of business income that has been
caused by physical loss or damage at its customers’ properties.
Specifically, on appeal, Stant points to a portion of the policy
titled “Supply Chain Time Element Coverage Extensions”
and its subsection termed “Contingent Time Element Ex-
tended” which covers losses “directly resulting from physical
loss or damage of the type insured to property of the type in-
sured at contingent time element locations within the terri-
tory of this policy.” That provision provides coverage for lost
income resulting from “physical loss or damage” at certain
properties, including its customers’ properties.
 The critical question for coverage, then, was whether the
loss at issue here resulted from “physical loss or damage” at
those properties. We have repeatedly interpreted similar lan-
guage in insurance cases seeking compensation for losses re-
lated to COVID-19 restrictions, and have consistently held
that temporary loss of use or restrictions on use do not consti-
tute “physical” damage or loss.
 For instance, in Sandy Point Dental P.C. v. Cincinnati Insur-
ance Co., 20 F.4th 327, 332 (7th Cir. 2021), we addressed an Il-
linois insurance policy which provided coverage for “direct
physical loss or damage.” We held that the word “physical”
modifies both damage and loss, and therefore the policy re-
quires that there be some physicality to either that loss or
damage in order to fall within the policy coverage. A mere
partial loss of use was insufficient to meet that physicality re-
quirement, at least where such loss was not so pervasive as to
render a property completely uninhabitable, amounting to a
complete physical dispossession. Id. at 334. We concluded
4 No. 22-1336

that in order to state a claim, the businesses needed to allege
a physical alteration to their property. Id. at 332–33. As sup-
port for that interpretation, we noted that the policy covered
losses during a period of restoration, which is defined by ref-
erence to the date by which the property should be repaired,
rebuilt or replaced. Id. at 333. We noted that “[w]ithout a
physical alteration to property, there would be nothing to re-
pair, rebuild, or replace.” Id. The provisions as a whole made
clear, then, that the term “direct physical damage or loss” in-
volved physical alteration to property. We have reiterated
that holding repeatedly in subsequent cases involving con-
tracts from other states. See, e.g., Paradigm Care & Enrichment
Center, LLC v. West Bend Mutual Insurance Co., 33 F.4th 417 (7th
Cir. 2022); Crescent Plaza Hotel Owner, L.P. v. Zurich American
Insurance Co., 20 F.4th 303 (7th Cir. 2021); Bradley Hotel Corp.
v. Aspen Specialty Insurance Co., 19 F.4th 1002 (7th Cir. 2021);
Circle Block, 44 F.4th 1014.
 Applying that standard to a claim based on pandemic-re-
lated restrictions, we held that the circumstances failed to al-
lege direct physical damage or loss. Sandy Point Dental had
alleged that the continuous presence of the virus on and
around the premises rendered the premises unsafe and unfit
for the intended use, and therefore caused physical property
damage or loss. We held those allegations insufficient to al-
lege direct physical loss, because they constituted only allega-
tions of a loss of the property’s intended or preferred use and
did not describe how the presence of the virus or the resulting
closure order physically altered its property. Sandy Point, 20
F.4th at 335.
 The language in the policy before us today contains simi-
lar language and mandates the same result. As with Sandy
No. 22-1336 5

Point, the policy in this case is limited to “physical” loss or
damage. Moreover, the policy in this case also references the
timeline of repairs and restoration in assessing the period of
coverage. The period of liability applicable to the contingent
time element extended coverage runs from the time of the
physical loss or damage until the time when the “building
and equipment could be (i) repaired or replaced; and
(ii) made ready for operations, under the same or equivalent
physical and operating conditions that existed prior to the
damage.” That language mirrors that in Sandy Point and sup-
ports the same interpretation which requires a physical alter-
ation for coverage.
 Stant argues that, in contrast to Sandy Point and the other
cases we have decided, in this case the policy covers “physical
damage or loss” to property, not “direct physical damage or
loss” to property. Stant asserts that the absence of the modi-
fier “direct” signifies more expansive coverage than the lan-
guage in Sandy Point and supports coverage for circumstances
that render property unfit or unsuitable for its intended pur-
pose or unsafe for normal human occupancy or continued
use.
 Even if the “direct” qualifier were absent in the language
here, that term was not the language that was critical to the
limitation of coverage recognized in Sandy Point. The require-
ment that the property loss or damage must be “physical”
was the limitation that mandated a physical alteration to the
property. The requirement of a physical alteration was not
based on the language that the property loss or damage must
be “direct.” And Stant has failed to explain why the modifier
“direct” should alter the conclusion that a physical alteration
was required.
6 No. 22-1336

 In the end, however, we need not decide the impact that
the word “direct” has on the interpretation of the policy lan-
guage, because the policy in this case contains language that
imposes the same essential requirement. Stant’s policy “co-
vers property … against all risks of physical loss or damage,
except as hereinafter excluded,” and in the first provision in the
Exclusions section, the “Policy excludes … indirect or remote
loss or damage.” (emphasis added) Therefore, the policy co-
vers only physical loss or damage that is not indirect or re-
mote, which is not materially different in language from the
policies we considered that covered only direct physical loss
or damage. Accordingly, that technical difference in language
does not portend a different result.
 Stant next argues that Sandy Point is inapplicable because
it involved Illinois law, whereas Indiana law is applicable
here. During the pendency of this appeal, however, we de-
cided Circle Block, 44 F.4th at 1016, which addressed the same
claim under Indiana law. In Circle Block, we again addressed
an all-risk insurance policy covering direct physical loss or
damage to property, and again held that businesses forced to
shut down or reduce operations during the pandemic failed
to allege direct physical loss or damage. Id. at 1016–17. As in
Sandy Point, we held that “a temporary denial of a plaintiff’s
preferred use of its property, absent some physical alteration,
does not fall within the plain meaning of ‘direct physical loss
or damage.’” Id. at 1019; see also Wilson v. USI Ins. Serv. LLC,
57 F.4th 131, 143 n.6 (3d Cir. 2023) (noting that “every other
Court of Appeals and all but one state supreme court to have
considered this issue also has held that loss of use caused by
closure orders issued in response to the COVID-19 pandemic
does not constitute physical loss or damage sufficient to trig-
ger property insurance coverage.”)
No. 22-1336 7

 Stant nevertheless argues that the spread of the COVID-19
virus during the pandemic resulted in a physical alteration,
which constituted physical loss or damage to property. It ar-
gues that the SARS-CoV-2 virions were present at the facilities
of its customers, on the surfaces and in the air inside those
locations, resulting in the shutdown or restrictions on opera-
tions. Stant claims that when people entered those facilities
the virions expelled into the air physically altered the surfaces
of Stant’s customers’ properties as well as the air, rendering
them dangerous and potentially lethal to breathe. Stant main-
tains that the danger posed by the virus resulted in the impo-
sition of government shutdowns and restrictions, which re-
sulted in the significant financial losses by Stant.
 Once again, our opinion in Circle Block has addressed and
rejected that argument. In that case, the plaintiff alleged that
virus particles physically attached to surfaces at a hotel, and
an amicus brief submitted by Purdue University asserted that
the virus “adsorbs” onto surfaces, materially altering them.
Circle Block, 44 F.4th at 1020. We held that neither Sandy Point
nor Indiana caselaw hold that any imaginable physical alter-
ation is sufficient. “We distinguished conditions that ‛gener-
ally involve persistent physical contamination that requires
repair or replacement, rather than cleaning and disinfecting,
to remediate.’” Id. at 1020. We held that the mere presence of
the virus on surfaces did not constitute the type of physical
alteration required to trigger coverage under the language of
the policy. Id. at 1020–22; see also Sandy Point, 20 F.4th at 335.
Stant’s arguments are indistinguishable from the ones pre-
sented in Circle Block, and therefore fail under the reasoning
of that case. See also Indiana Repertory Theatre, Inc. v. Cincinnati
Cas. Co., 2023 WL 1950974, at *1 (Ind. Ct. App. Feb. 13, 2023).
8 No. 22-1336

 Stant’s other arguments fare no better. It argues that we
should certify the question to the Indiana Supreme Court, but
we refused such a certification request in Circle Block, holding
that we had no serious doubt as to how the Indiana Supreme
Court would resolve these questions. Circle Block, 44 F.4th at
1024. Stant has raised no argument that would cause us to
question that determination now.
 Because we hold that Stant’s claim does not fall within the
coverage of the policy for physical property loss or damage,
we need not address FM’s alternative arguments that the
claim would fall within other exclusions in the policy, includ-
ing the Loss of Use exclusion and the Contamination exclu-
sion. We have addressed similar exclusions in numerous
cases and determined that such COVID-based claims fell
within those exclusions but express no opinion as to the ap-
plicability in this case. See, e.g., Bradley Hotel Corp., 19 F.4th at
1007–08 (loss of use exclusion); Mashallah Inc. v. West Bend Mu-
tual Ins. Co., 20 F.4th 311 (7th Cir. 2021) (virus exclusion); Cres-
cent Plaza Hotel, 20 F.4th 303 (microorganism exclusion).
 The decision of the district court is AFFIRMED.