*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0639

Fond du Lac Management, Inc.,
Appellant,

vs.

Lexington Insurance Company,
Respondent,

Certain Underwriters at Lloyd's, London Subscribing to Policy #PJ193647, et al.,
Respondents,

Underwriters at Lloyd's, London - Aspen Specialty Insurance Company, et al.,
Respondents,

Arch Specialty Insurance Company,
Defendant,

Evanston Insurance Company,
Respondent,

Allied World National Assurance Company,
Respondent.

**Filed December 11, 2023**
**Affirmed**
**Smith, Tracy M., Judge**

Carlton County District Court
File No. 09-CV-22-1172

Sean Copeland, Scott A. Buchanan, Fond du Lac Band of Lake Superior Chippewa, Cloquet, Minnesota; and

Dan Drachler, Jacob H. Polin (pro hac vice), Lieff Cabraser Heimann & Bernstein, LLP, San Francisco, California (for appellant)

Beth A. Jenson Prouty, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for respondent Lexington Insurance Company)

Nicholas A. Dolejsi, Mackenzie Moy, Zelle LLP, Minneapolis, Minnesota (for respondents Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. PJ193647, PJ1900131, PM1933021, PJ1900067, Endurance Worldwide Insurance Ltd. t/as Sompo International, and Homeland Insurance Company of New York)

Stacy A. Broman, Meagher + Geer, P.L.L.P., Minneapolis, Minnesota (for respondents Hallmark Specialty Insurance Company and Underwriters at Lloyd's, London – Aspen Specialty Insurance Company)

Dan W. Goldfine, Dickinson Wright PLLC, Phoenix, Arizona (for respondent Evanston Insurance Company)

Daryl T. Fuchihara, Johnson, Kille & Seiler, P.A., Duluth, Minnesota (for respondent Allied World National Assurance Company)

Considered and decided by Bratvold, Presiding Judge; Reyes, Judge; and Smith, Tracy M., Judge.

## NONPRECEDENTIAL OPINION

**SMITH, TRACY M.**, Judge

In this insurance-coverage dispute, appellant-insured Fond du Lac Management, Inc. (Fond du Lac) challenges the district court's dismissal under Minnesota Rule of Civil Procedure 12.02(e) of its contract claims against respondent-insurers[1] based on denial of business-interruption coverage for losses due to COVID-19-related business closures. Fond du Lac argues that the district court erred by determining that the complaint fails to state a claim because it does not set forth alleged facts that support a finding of physical

---

[1] Respondent-insurers are those entities listed as respondents in the caption of this case. Defendant Arch Specialty Insurance Company takes no part in this appeal.

loss or damage to Fond du Lac's properties caused by the SARS-CoV-2 virus.[2] Because we conclude that Fond du Lac failed to allege that the virus was present at and contaminated its properties, causing direct physical loss or damage, we affirm.

**FACTS**

The complaint and attached exhibits set forth the following alleged facts. Fond du Lac operates Black Bear Casino Resort, Fond-du-Luth Casino, and Black Bear Golf Course in Carlton County and St. Louis County. Fond du Lac is the "corporate business committee" for the Fond du Lac Band of Lake Superior Chippewa (the Band).

Fond du Lac purchased an all-risk property-damage insurance policy from insurers to provide coverage for its casinos and golf course. The policy became effective on July 1, 2019.

On March 13, 2020, the Band declared a state of emergency concerning the COVID-19 pandemic. The Band then ordered Black Bear Casino Resort and Fond-du-Luth Casino to close beginning March 18, 2020.[3] As a result of these closures, Fond du Lac suffered a loss of "millions of dollars." On June 15, 2020, the casinos reopened, but at reduced capacity pursuant to the Band's orders. The reduced capacity resulted in further losses.

In February 2021, Fond du Lac requested business-interruption coverage for its losses. The policy provided the following business-interruption coverage:

---

[2] The SARS-CoV-2 virus causes the coronavirus disease (COVID-19). World Health Org., *Coronavirus disease (COVID-19)*, https://www.who.int/health-topics/coronavirus#tab=tab_1 [https://perma.cc/45UV-JU2H].

[3] Black Bear Golf Course was already closed for the winter and remained closed during the relevant policy period.

> Against loss resulting directly from interruption of business, services or rental value caused by direct physical loss or damage, as covered by this Policy to real and/or personal property insured by this Policy, occurring during the term of this Policy.

In a letter dated July 6, 2022, a claims adjuster, on behalf of insurers, denied Fond du Lac's request for coverage. The letter stated that the losses were not covered under the policy because "there is no evidence that the closure of the casinos and golf course or the continued reduced capacity issues at the casinos were the result of physical loss or damage to property."

On June 29, 2022, Fond du Lac sued insurers for breach of contract and breach of covenant of good faith and fair dealing. Fond du Lac also sought declaratory relief establishing coverage. Insurers moved to dismiss the complaint for failure to state a claim on which relief can be granted under Minnesota Rule of Civil Procedure 12.02(e). The district court granted insurers' motion to dismiss, concluding that Fond du Lac did not allege "any facts that, if true, would plausibly show any physical loss or injury to [its] insured properties."

Fond du Lac appeals.

## DECISION

When reviewing a case dismissed under Minnesota Rule of Civil Procedure 12.02(e) for failure to state a claim on which relief can be granted, appellate courts must determine "whether the complaint sets forth a legally sufficient claim for relief." *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008). The standard of review is de novo. *Id.*

4

"A claim is sufficient against a motion to dismiss based on [r]ule 12.02[e] if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *N. States Power Co. v. Franklin*, 122 N.W.2d 26, 29 (Minn. 1963). In analyzing the sufficiency of a claim, appellate courts "accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 606 (Minn. 2014). "[T]he pleading of broad general statements that may be conclusory is permitted." *Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 503 (Minn. 2021) (quotation omitted). But appellate courts are not bound by legal conclusions in the complaint. *Hebert*, 744 N.W.2d at 235. Appellate courts consider the complaint as a whole, "including the facts alleged throughout the complaint and the attachments to the complaint." *Hardin Cnty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 192 (Minn. 2012); *see* Minn. R. Civ. P. 10.03 ("A copy of any written instrument which is an exhibit to a pleading is a part of the statement of claim . . . set forth in the pleading.").

***Legal Framing***

Fond du Lac claims that it is entitled to coverage for losses under the business-interruption provision of the policy. For coverage under that provision, the losses must have resulted directly from an interruption of business caused by "physical loss or damage" to the insured properties. Fond du Lac argues that it sufficiently pleaded that the SARS-CoV-2 virus was present at and contaminated the insured properties, causing them physical loss or damage, resulting in business-interruption losses.

"Physical loss or damage" is not defined in the policy. "An insurance policy must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (quotation omitted).

Fond du Lac, citing dictionary definitions of the words "physical," "loss," and "damage," argues that the plain and ordinary meaning of the phrase "physical loss or damage" is "a physical change to the property [that] impairs its function or lessens its value." Fond du Lac asserts that structural damage to the property is not required and that the presence of a contaminant that renders the property unusable constitutes "physical loss or damage." Fond du Lac also contends that the absence from its all-risk policy of an exclusion for virus-related losses supports its argument that a virus can cause "physical loss or damage." Applying its interpretation of the policy, Fond du Lac argues that, according to its complaint, the SARS-CoV-2 virus was present at and contaminated its properties, rendering them unsafe and unusable, and thereby causing physical loss or damage to the insured properties.

Fond du Lac relies on three Minnesota cases to support its argument. In *Marshall Produce Co. v. St. Paul Fire & Marine Insurance Co.*, the Minnesota Supreme Court concluded that the insured's fire policies covered losses incurred when the federal government rejected the canned egg powder manufactured by the insured because smoke from a nearby fire had entered the insured's processing plant and contaminated the cans and the packaging around the cans. 98 N.W.2d 280, 296-97 (Minn. 1959). In *Sentinel Management Co. v. New Hampshire Insurance Co.*, we concluded that the insured owner

6

of apartment buildings had demonstrated coverage for a "direct, physical loss to property" under its all-risk insurance policy when asbestos contamination impaired or destroyed the buildings' function even though the contamination did not cause a "tangible injury to the physical structure" of the buildings. 563 N.W.2d 296, 300-01 (Minn. App. 1997). And in *General Mills, Inc. v. Gold Medal Insurance Co.*, we affirmed coverage under the insured's all-risk policy for losses due to "direct physical loss or damage to property" when cereal products manufactured by the insured were deemed adulterated under federal regulations because oats used in their manufacture had been treated with an unapproved pesticide. 622 N.W.2d 147, 151-52 (Minn. App. 2001), *rev. denied* (Minn. Oct. 17, 2000, Apr. 17, 2001). Fond du Lac contends that these cases support its assertion that contamination by "coronavirus particles" meets the definition of "physical loss or damage."

Insurers, on the other hand, argue that "physical loss or damage" unambiguously requires "actual, tangible harm" to the insured properties and that the SARS-CoV-2 virus does not cause such harm. They argue that another provision in the policy—the "period of restoration" provision—confirms that "tangible, physical" harm to the property is required. That provision limits business-interruption coverage to a period from "the date direct physical loss occurs and interrupts normal business operations" to "the date that the damaged property should have been repaired, rebuilt or replaced." Insurers argue that the terms "repair," "rebuild," and "replace" in the context of the phrase "direct physical loss or damage" to property demonstrate that the "loss" or "damage" must be "physical" in nature.

7

Insurers also cite caselaw from other jurisdictions rejecting claims for coverage for COVID-19-related business-interruption losses due to alleged physical loss or damage to property. For example, insurers cite *Olmsted Medical Center v. Continental Casualty Co.*, in which the United States Court of Appeals for the Eighth Circuit, applying Minnesota law, affirmed dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. 65 F.4th 1005, 1009-12 (8th Cir. 2023). The Eighth Circuit determined that the complaint was insufficient because, even if some forms of contamination can support a finding of "physical loss," the insured medical center had not alleged that the SARS-CoV-2 virus had such an effect on its property. *Id.* at 1010. In arriving at that conclusion, the court reasoned that *Marshall Produce* provided little guidance because that case addressed policies insuring property "against all loss or damage by fire" rather than a policy insuring against business-interruption losses caused by "direct *physical* loss of or damage to covered property." *Id.* at 1010-11 (quotation omitted). And it decided that *General Mills* and *Sentinel Management* were distinguishable because the pesticide contamination in *General Mills* and the asbestos contamination in *Sentinel Management* were "permanent absent some intervention" and rendered the properties essentially useless while "a SARS-CoV-2 contamination is surface-level, removed with relative ease, and will dissipate on its own in a matter of days, if not sooner." *Id.* at 1011.[4]

---

[4] Insurers cite other appellate decisions from federal and non-Minnesota jurisdictions similarly rejecting, in a rule 12 posture, claims for coverage for COVID-19-related business-interruption losses due to physical loss or damage to property. *E.g.*, *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d 1266, 1276 (Mass. 2022) (affirming dismissal of insureds' complaint because the alleged presence of virus does not constitute loss or damage to the property); *Colectivo Coffee Roasters, Inc. v. Soc'y Ins.*, 974 N.W.2d 442,

To summarize, Fond du Lac contends that contamination by the SARS-CoV-2 virus constitutes "physical loss or damage" to property and that the complaint sufficiently alleges that the virus was present at and contaminated Fond du Lac's properties. Insurers, on the other hand, argue that the SARS-CoV-2 virus cannot cause "physical loss or damage" to property and that, even if the virus could cause such loss or damage, the complaint is insufficient because it fails to allege facts that would show that the virus was present at and contaminated the properties. Thus, the questions presented are (1) whether contamination by the SARS-CoV-2 virus states a claim premised on direct physical loss or damage and (2) whether the complaint read as a whole alleges contamination by the virus. We need not decide the first question if the answer to the second question is no. We therefore turn to the complaint and its exhibits to determine whether Fond du Lac alleges that its properties were contaminated by the SARS-CoV-2 virus.

***Allegations in the Complaint***

Fond du Lac points us to the following three paragraphs in the complaint:

---

447 (Wis. 2022) (same); *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 145-46 (3d Cir. 2023) (same); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 933 (4th Cir. 2022) (same); *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1020-21 (7th Cir. 2022) (same); *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1362 (11th Cir. 2022) (same); *see also Sullivan Mgmt., LLC v. Fireman's Fund Ins. Co.*, 879 S.E.2d 742, 745 (S.C. 2022) (ruling, in answer to certified question from federal district court, that presence of virus on property does not constitute physical loss or damage to property); *Neuro-Commc'n Servs., Inc. v. Cincinnati Ins. Co.*, 219 N.E.3d 907, 915 (Ohio 2022) (same); *Cherokee Nation v. Lexington Ins. Co.*, 521 P.3d 1261, 1270 (Okla. 2022) (ruling that insurers are entitled to summary judgment because virus did not constitute physical loss or damage to property); *Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct. ex rel. County. of Clark*, 535 P.3d 254, 264 (Nev. 2023) (same).

39. Members of the Band have been exposed to and contracted Coronavirus, and on information and belief, have then entered onto the premises of some of the Plaintiff's businesses at issue in this Complaint.

. . . .

41. Based on the preceding conditions, and confirmed instances of infections near the businesses by persons who were likely to visit the businesses (or come into contact with persons who visited the businesses) it is likely that customers, employees, vendors, or other persons infected with or carrying Coronavirus particles entered the businesses, or that Coronavirus otherwise infected surfaces, air, or people at the businesses.

. . . .

56. The presence of the Coronavirus and the Orders prohibited certain physical access to, use of, and operations at and by the Plaintiff's businesses, their employees, and their customers. . . . As a result of the presence of the Coronavirus and the Orders, physical components of the Plaintiff's businesses became unusable, damaged, and/or lost the ability to generate income.

Based on these paragraphs, we understand Fond du Lac's theory to be that SARS-CoV-2 particles likely entered the properties, which would have contaminated the properties and caused physical loss or damage. *See Franklin*, 122 N.W.2d at 29 (measuring sufficiency of complaint with reference to pleader's theory). For the reasons that follow, we conclude that the complaint and the exhibits do not sufficiently allege that the virus was present at and contaminated the properties.

In paragraph 39, Fond du Lac asserts "on information and belief" that members of the Band infected with COVID-19 entered some of its insured properties. Even if this allegation, made "on information and belief," is supported by sufficient information to

10

meet the notice-pleading standard, the paragraph does not allege that the believed presence of infected persons on some properties resulted in actual physical contamination of the properties.

In paragraph 41, Fond du Lac alleges that coronavirus particles "likely" infected its insured properties. But alleging that the properties were "likely" contaminated is different from alleging that contamination actually happened. Fond du Lac argues that alleging the "likelihood" of contamination is sufficient at the pleading stage. We disagree. To establish coverage under its theory of "physical loss or damage," Fond du Lac would have to prove that the SARS-CoV-2 virus was, in fact, present at and contaminated its properties. Therefore, to state a claim for coverage under that theory, Fond du Lac has to allege that the virus was present at and contaminated the properties.

Finally, while in paragraph 56 Fond du Lac alleges that the presence of the coronavirus and state and Band orders impaired Fond du Lac's businesses, in context those allegations refer to the COVID-19 pandemic and the resulting government orders generally—not to the presence of the SARS-CoV-2 virus *at the insured properties*.

Moreover, Fond du Lac's responses to the claims adjuster when it first sought business-interruption coverage, which are incorporated as exhibits into the complaint, demonstrate that Fond du Lac was not aware of any presence of or contamination by the SARS-CoV-2 virus at its properties before its casinos reopened.

> Q: Have any insured location(s) been tested for the presence of the virus that causes COVID-19?
> A: No. There was no evidence of any facility contamination by the SARS-CoV-2, nor was the Band aware of a readily

11

available commercial test for the presence of SARS-CoV-2 in the environment or on environmental surfaces.

. . . .

Q: Of any locations referenced with reported COVID-19 cases, without specifically identifying the person affected, . . . [w]as there a positive COVID-19 test that confirmed the disease?

A: 14 employees were positive for COVID-19 at BBCR[5]; there was a lesser number at Fond-du-Luth. However, all of these positive results came after BBCR and Fond-du-Luth reopened in June; the first reported COVID-19 infection by an employee was reported to have occurred on October 7, 2020.

And Fond du Lac alleges in paragraph 42 of the complaint that the properties were required to close on March 18, 2020, "under the Orders by recognized civil authorities and the ongoing and worsening pandemic"—not because the SARS-CoV-2 virus was present at and contaminated the properties.

Considering the complaint and the attached exhibits as a whole, we conclude that Fond du Lac has not pleaded facts sufficient to show actual contamination of its insured properties causing physical loss or damage to property. We therefore need not decide whether, under the policy, the SARS-CoV-2 virus could ever cause "physical loss or damage" to property as required to trigger business-interruption coverage. The district court did not err by dismissing the complaint for failure to state a claim on which relief can be granted.

**Affirmed.**

---

5 "BBCR" refers to Black Bear Casino Resort.