In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-1695

PARADIGM CARE & ENRICHMENT CENTER, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

WEST BEND MUTUAL INSURANCE COMPANY,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:20-cv-00720-JPS — **J.P. Stadtmueller**, *Judge*.

———————————

ARGUED JANUARY 14, 2022 — DECIDED MAY 3, 2022

———————————

Before MANION, ROVNER, and HAMILTON, *Circuit Judges*.

MANION, *Circuit Judge*. Appellants here are childcare centers in Illinois and Michigan. They sued their insurer after it denied claims related to business disruptions caused by the COVID-19 pandemic. The district court granted the insurer's motion to dismiss, concluding that the complaint did not plausibly allege "direct physical loss of or damage to" property or any other facts falling within the scope of the insurance policies' coverage. Because the district court's dismissal is

consistent with our recent decisions in COVID-19-related in-
surance cases—and, indeed, with those of every other appel-
late court to have resolved such cases—we affirm.

## I. Background

In an appeal from the dismissal of a complaint for failure
to state a claim, we "accept all well-pleaded facts as true and
draw all reasonable inferences therefrom in the plaintiffs' fa-
vor." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 317
(7th Cir. 2021).

Paradigm Care & Enrichment Centers operate in Water-
ford and Canton, Michigan, and prepare young children for
kindergarten, focusing on their academic, social, and emo-
tional needs. Creative Paths Learning Center and Creative
Paths Infant Center are located in Skokie, Illinois. Their mis-
sion is to create an environment that fosters children's social,
emotional, physical, and cognitive development. (From here
on, we will refer to the appellants collectively as the "Cen-
ters.")

The Centers operated successfully until the arrival of the
COVID-19 pandemic. On March 20, 2020, "to slow and stop
the spread of COVID-19," Illinois Governor J.B. Pritzker or-
dered all persons living in the state to stay at home except to
perform specified "essential activities" and ordered "non-es-
sential" businesses to cease all but minimum basic operations.
Ill. Exec. Order No. 2020-10 (Mar. 20, 2020). Childcare provid-
ers were permitted to continue operating only if they received
an emergency license to care for the children of workers
deemed essential.[1] A few days later, Governor Gretchen

---

[1] The Village of Skokie had issued a March 18, 2020, order directing
the closure of all childcare facilities "to prevent the spread of COVID-19,"

Whitmer issued a similar order for the State of Michigan in an effort to "suppress the spread of COVID-19." Mich. Exec. Order No. 2020-21 (Mar. 23, 2020). Subject to certain mitigation measures, childcare providers could remain open solely for the purpose of serving the children of "critical infrastructure" workers. *Id.*

Both States would eventually lift these restrictions by June 2020. While they were in place, however, the Centers suspended operations. Upon reopening, the Centers operated at reduced capacities. As a result, they lost substantial income and incurred additional expenses.

The Centers filed claims under their all-risk commercial property insurance policies. Their insurer, West Bend Mutual Insurance Company, denied the claims. So, the Centers brought this action. They alleged that West Bend breached its contracts with them and sought declaratory judgment to that effect, on behalf of themselves and a similar class of insureds.

The Centers, whose policies are identical in all relevant respects, invoked several provisions. The "Business Income" section covers the actual loss of income due to the suspension of an insured's operations "caused by direct physical loss of or damage to property." The "Extra Expense" provision reimburses for expenses that would not have been incurred absent "direct physical loss [of] or damage to property." Under both provisions coverage is limited to the "period of restoration,"

---

but that order was quickly modified to conform with Governor Pritzker's executive order, which allowed childcare facilities to operate on an emergency basis. https://www.skokie.org/DocumentCenter/View/3128/VOS-Emergency-Childcare-Centers-and-Childcare-Homes-PDF?bidId=. Given this conformance, we need not mention the Skokie order again.

during which property is "repaired, rebuilt or replaced." Also, under both the loss or damage must be caused by a "Covered Cause of Loss," defined as "[d]irect physical loss."

Next, under the "Civil Authority" section lost income and extra expenses are covered when a civil authority prohibits access to insured premises because of damage at nearby property resulting from a "Covered Cause of Loss."

The "Communicable Disease" provision, unlike the above coverage, does not depend on a Covered Cause of Loss. Instead, it covers income lost and expenses incurred when an insured's operations are temporarily shut down or suspended by order of "a local, state, or federal board of health or similar governmental board … due to an outbreak of a 'communicable disease' … at the insured premises."

Finally, what the Centers call the "Sue and Labor" section lists certain responsibilities that an insured "must see … are done in the event of loss or damage to Covered Property." These include promptly notifying West Bend of loss or damage, taking "reasonable steps to protect" the property from further harm, and keeping a record of the "expenses necessary to protect" the property.

West Bend moved to dismiss the complaint, and the motion was granted. The district court concluded that the Centers had not plausibly alleged that COVID-19 caused physical loss of or damage to their property—or to nearby property— or that government shutdown orders were due to a COVID-19 outbreak at their premises. The court also determined that the Sue and Labor section imposes duties on the Centers but does not itself provide any coverage. This appeal followed.

## II. Analysis

"We review a district court's grant of a motion to dismiss on the pleadings *de novo*." *Mashallah*, 20 F.4th at 319. To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because this case arises under diversity jurisdiction, we apply the law that a state court in Wisconsin—where the lawsuit was filed—would apply. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). The parties agree that, under Wisconsin choice-of-law principles, Illinois supplies the rule of decision for Creative Paths' claims and Michigan for Paradigm Care's claims. So, our task is to predict how the supreme courts of those States would resolve the issues presented. *Mashallah*, 20 F.4th at 319.

An insurance policy under Illinois law "is to be construed as a whole, giving effect to every provision, if possible." *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 331 (7th Cir. 2021) (internal quotation marks omitted). "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Id.* Genuine ambiguity is resolved in the insured's favor. *See Mashallah*, 20 F.4th at 322. But policy language must be "subject to more than one reasonable interpretation" before it is deemed ambiguous. *Sandy Point*, 20 F.4th at 331. Ambiguity does not arise "simply because the parties disagree as to its meaning." *Id.*

Michigan law, as Paradigm Care concedes, "accords with that of Illinois on all points relevant to this appeal." Appellants' Br. at 21; *see, e.g.*, *Henderson v. State Farm Fire & Cas. Co.*,

596 N.W.2d 190, 193–94 (Mich. 1999) (using interpretive principles that track those of Illinois).

Thus, to survive a motion to dismiss, the Centers must plausibly allege that they are entitled to coverage under a reasonable interpretation of the language in their policies.

### A. Business Income, Extra Expense & Civil Authority Sections

The Centers first argue that they are covered under the Business Income and Extra Expense provisions. They contend that the undefined policy requirement of "direct physical loss" appearing in these provisions does not require material, tangible, or corporeal alteration of their property. Rather, their argument goes, the term is broad enough to describe the circumstances alleged in their complaint—where the COVID-19 virus was present in the air and had attached to the surfaces of property, rendering their premises dangerous and unusable, thereby constituting a physical loss.

*Sandy Point Dental, P.C. v. Cincinnati Insurance Co.* considered and rejected such reasoning. We held with respect to Illinois law that the phrase "direct physical loss" in a commercial property insurance policy "requires a physical alteration to property"—that is, some "alteration in appearance, shape, color or … other material dimension." 20 F.4th at 331, 333. In so holding, we relied on *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 757 N.E.2d 481, 502 (Ill. 2001), where the Supreme Court of Illinois construed the ordinary meaning of a similar term that included the word "physical." Applying *Eljer*'s reasoning, we determined that the COVID-19 virus does not effect physical loss of or damage to property. While the virus may limit a business's preferred use of its premises, "its

impact on physical property is inconsequential." *Id.* at 334–35. That is, whether it is wiped away with disinfectants or allowed to decay on its own, the virus ultimately leaves property physically unaltered. *Id.* at 335. Absent such alteration, direct physical loss occurs only when a risk causes "complete physical dispossession of property," and the COVID-19 virus does not. *Id.* at 334.

The Supreme Court of Michigan has yet to opine on this issue, but we are confident it would agree with *Sandy Point*'s analysis. In making such a prediction, we first draw guidance from the Michigan Court of Appeals. *See Mashallah*, 20 F.4th at 319. That court recently observed in a COVID-19-related insurance case that a loss, to constitute a "direct physical loss," must "have some manner of tangible and measurable presence or effect in, on, or to the premises." *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, __ N.W.2d __, __, No. 354418, 2022 WL 301555, at *4 (Mich. Ct. App. Feb. 1, 2022).

The unanimity of decisions from other federal courts of appeals reinforces our prediction. Construing the ordinary meaning of the phrase under various States' laws, the circuits have all reached the same general conclusion as the Sixth Circuit when applying Michigan law: An insurance policy limiting coverage to "direct physical loss" requires either "destruction or alteration of the property, or dispossession from the property." *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398, 403 (6th Cir. 2022); *see Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 931–34 (4th Cir. 2022) (applying West Virginia law and collecting circuit court cases applying the laws of California, Georgia, Iowa, New York, Ohio, Oklahoma, and Texas). The Centers point to no authority suggesting that the Supreme Court of Michigan would reject this consensus.

Turning to the present complaint, we agree with the district court that it does not allege direct physical loss or damage. The Centers do not assert—nor could they under the plain and unambiguous terms of the policies—that their property was physically altered by the COVID-19 virus, such that it had to be repaired, rebuilt, or replaced. Nor have they alleged anything more than a temporary denial of their preferred use of their property. Like the dental practice in *Sandy Point*, the Centers were permitted to put their property to *some* use during the shutdowns by providing care for the children of essential workers. *See* 20 F.4th at 335 ("Sandy Point insured its property, not its ideal use of that property.").

The Centers raise only one argument not settled by *Sandy Point* about the meaning of "physical loss," based on the organization of their policies. The "Coverage" section begins with the statement that West Bend "will pay for direct physical loss of or damage to Covered Property at the premises … caused by or resulting from any Covered Cause of Loss." The Communicable Disease provision (which we discuss below) appears as a subsection following this general statement. Thus, the Centers reason, the policies acknowledge that a communicable disease can cause direct physical loss of or damage to covered property.

We agree with West Bend that this argument has been forfeited because it was not made below.[2] The Centers' contention that the meaning of "physical loss" can be discerned from

---

[2] West Bend actually asserts that the argument has been *waived*, but the circumstances it describes show not waiver but forfeiture. Waiver is an intentional omission, whereas forfeiture is merely unintentional or inadvertent. *See Ricci v. Salzman*, 976 F.3d 768, 771 & n.2 (7th Cir. 2020).

their policies' structure was raised for the first time in their opening brief in this court. Neither their brief in opposition to West Bend's motion to dismiss nor any other submission to the district court mentions it. The argument is therefore forfeited. *See Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019).

*Sandy Point*'s reasoning further forecloses coverage under the Civil Authority section. That provision is only triggered when access to the Centers' premises is prohibited because of damage to nearby property caused by a Covered Cause of Loss, which is defined in the policy as "[d]irect physical loss." As already explained, the COVID-19 virus does not cause physical loss (or damage) in any plain or ordinary sense.

That physical-loss requirement readily distinguishes this case from *Sloan v. Phoenix of Hartford Insurance Co.*, 207 N.W.2d 434 (Mich. Ct. App. 1973). There, the "Civil Authority" provision mandated only that a closure order result from one of the "peril(s) insured against," which included rioting. *Id.* at 436–37. Whereas here, the policies require that a Covered Cause of Loss be physical in nature. In other words, the policy language in *Sloan* was simply different.

For all these reasons, the district court properly dismissed the portions of the complaint premised on the ordinary, unambiguous meaning of the language in the Business Income, Extra Expense, and Civil Authority sections.

### B. Communicable Disease Section

The Centers next invoke the Communicable Disease provision. Recall that this policy section covers lost income and extra expenses if a government entity shuts down business operations "due to an outbreak" of a communicable disease "at the insured premises." Unlike the provisions discussed

above, Communicable Disease coverage does not turn on the existence of physical loss or damage. The Centers contend they are entitled to coverage because they have alleged that the shutdown orders (1) were issued in response to the COVID-19 pandemic and (2) necessarily were directed at their individual premises, since the orders applied to the entire States of Illinois and Michigan, in which their premises are situated. We are not persuaded.

The policies do not define "due to," and the parties dispute how strict of a causal nexus the phrase imposes. *Cf. Mashallah*, 20 F.4th at 320–21 (noting that Illinois generally "favors the efficient-or-dominant-proximate-cause rule in the absence of contrary language in the policy"). But the question of precise degree is irrelevant because "due to" clearly requires *some* degree of causation between a shutdown order and a communicable disease outbreak "at the insured premises." *See, e.g.*, *Levy v. Minn. Life Ins. Co.*, 517 F.3d 519, 523–26 (7th Cir. 2008). And in no sense were the executive orders at issue here caused by a COVID-19 outbreak at the Centers (or, for that matter, at any other specific location). Rather, the orders were general prophylactic measures taken to slow, suppress, and stop the spread of COVID-19. These same executive orders would have been promulgated verbatim even if the Centers had not existed. Thus, the orders were not issued "due to" conditions at the Centers' premises. *See Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645, 651 (6th Cir. 2021) (noting "no allegation that Ohio's Director of Health had ever even heard of Dakota Girls or the other preschools in this case").

The executive orders are legal documents, *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1009 (7th Cir. 2021), and their purpose and scope are clear from the orders

themselves. We are not obliged to accept complaint allegations that are inconsistent with the plain meaning of those documents. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (the court "need not accept as true statements of law"). Dismissal of the counts relying on this section was proper.

## C. Sue & Labor Section

The final section of the policies that the Centers contend West Bend breached is the so-called Sue and Labor provision. As noted above, this provision—which is actually titled "Duties In The Event of Loss or Damage"—specifies certain things an insured must do when seeking reimbursement for covered losses or expenses. These include promptly notifying West Bend when loss or damage occurs, allowing West Bend to inspect the property, taking reasonable steps to protect the property from additional harm, and keeping adequate records regarding expenses incurred—including records of expenses incurred as a result of the duty to protect.

The Sue and Labor provision does not itself establish coverage. Rather, it imposes obligations on an insured seeking coverage that is outlined elsewhere in the policy. True, the provision may impose expenses on an insured, such as the costs of preventing further damage and of creating records. But the Centers agreed to these obligations in exchange for having their claims considered by West Bend. The Sue and Labor provision does not guarantee that those costs will be reimbursed when coverage is not otherwise established. The complaint does not state a claim under this section.

## III. Conclusion

The COVID-19 pandemic undoubtedly caused tremendous financial strain to small businesses like the Centers. But

the losses and expenses they allege are simply not covered under the ordinary and unambiguous terms of their insurance policies. The district court's judgment is AFFIRMED.