Filed 7/21/23  Saddle Ranch Sunset v. Fireman's Fund Ins. Co. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| SADDLE RANCH SUNSET, LLC et al., | B313609 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV36531) |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| FIREMAN'S FUND INSURANCE COMPANY et al., | |
| Defendants and Respondents. | [There is no change in judgment] |

THE COURT:*

GOOD CAUSE appearing the opinion filed in the above-entitled matter on June 22, 2023, is modified as follows:

On page 18, before the last paragraph that begins with "At oral argument," insert the following new paragraph:

> Fireman's Fund points out that the definition section states:  "If the word 'location' is not shown in bold face, then such a reference includes all of the following:  [¶] (a) **Location(s)**; and [¶] (b) the legal boundaries of a parcel of property insured by Newly Acquired Location Coverage

or Unnamed Location Coverage, or both." (Boldface in the original.) Fireman's Fund asserts that because of this sentence, the public health authority's order must specifically identify a Saddle Ranch restaurant to invoke coverage. We disagree. The sentence states un-bolded "location" includes the insured properties; it does not say that un-bolded "location" exclusively means the insured properties. "The term 'includes' is ordinarily a word of enlargement and not of limitation." (*People v. Western Air Lines* (1954) 42 Cal.2d 621, 639.) Thus, the use of un-bolded "location" evokes its common meaning, inclusive of the insured properties. It does not require the restaurants to be singled out in the public health orders, requiring disinfection and evacuation.

There is no change in judgment.

The petition for rehearing is denied.

_____

RUBIN, P. J.          BAKER, J.          MOOR, J.

2

Filed 6/22/23  Saddle Ranch Sunset v. Fireman's Fund Ins. Co. CA2/5
(unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SADDLE RANCH SUNSET, LLC et al., | B313609 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV36531) |
| v. | |
| FIREMAN'S FUND INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven Kleifield, Judge.  Reversed and remanded with directions.

Sinclair Braun, Nathaniel S.G. Braun and Nick S. Pelletier for Plaintiffs and Appellants.

Covington & Burling, Rani Gupta, David B. Goodwin, and Sabrina T. McGraw for United Policyholders as Amicus Curiae on behalf of Plaintiffs and Appellants.

DLA Piper, John P. Phillips and Brett Solberg for Defendants and Respondents.

Athene Law and Long X. Do for the California Medical Association as Amicus Curiae.

———————————————

Plaintiffs Saddle Ranch Sunset, LLC, Saddle Ranch Orange, LLC, Saddle Ranch Valencia, LLC, and Saddle Ranch Glendale, LLC sued defendants Fireman's Fund Insurance Company, Allianz Global Corporate & Specialty, and Allianz Global Risks US Insurance Company (collectively, Fireman's Fund) for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs alleged that Fireman's Fund wrongfully denied property insurance coverage for COVID-19 pandemic-related losses incurred at their insured restaurants. Coverage was based on a communicable disease extension that plaintiffs had purchased. Fireman's Fund demurred, arguing primarily that plaintiffs failed to allege they incurred "direct physical loss or damage." The trial court sustained the demurrer without leave to amend, concluding plaintiffs could not allege direct physical loss or damage and did not allege a communicable disease event under the policy. Plaintiffs appealed.

Our colleagues in Division Four of the First District, and Division Seven of the Second District recently interpreted identical Fireman's Fund policy language and found that allegations of COVID-19 contamination were sufficient to allege "direct physical loss or damage" under the insureds' communicable disease coverage extensions. (*Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.* (2022) 83 Cal.App.5th 1062 (*Amy's Kitchen*); *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96 (*Marina Pacific*).)[1] We agree

---

[1] *Marina Pacific* was filed a week after Fireman's Fund filed its the respondent's brief. Fireman's Fund shortly thereafter requested permission to file a supplemental brief addressing *Marina Pacific*. We granted its request, but Fireman's Fund did not file a supplemental brief.

with our colleagues that plaintiffs have sufficiently alleged the existence of a covered communicable disease event and direct physical loss or damage under the policy. Accordingly, we reverse.

### *FACTUAL AND PROCEDURAL BACKGROUND*[2]

### *1.   Plaintiffs' Insurance Policy*

Plaintiffs (four corporations based in California) operated four restaurants in close proximity to major medical centers and sports arenas at three locations in California and one in Arizona. In early 2020, plaintiffs obtained an insurance policy from Fireman's Fund, with a year-long policy period beginning on February 25, 2020. The policy insured plaintiffs against a range of business risks for their four restaurants.[3]

---

*Amy's Kitchen* was published several days after the parties completed briefing.

[2]     As this case is before us on demurrer, in "accordance with the standard of review, we recite the facts as they are alleged in the complaint." (*Moe v. Anderson* (2012) 207 Cal.App.4th 826, 828.)

[3]     The insurance contract was not attached to the complaint, but the complaint quotes relevant provisions. Fireman's Fund sought judicial notice of the entire insurance policy: "Policy number USC013334200, with a policy period of February 25, 2020 through February 25, 2021, issued to Plaintiffs by Defendant Fireman's Fund Insurance Company." The trial court did not rule on the motion and it is unclear in what manner the court relied on the document in making its decision. We informed the parties of our intent to take judicial notice of the policy and

The policy included a communicable disease coverage extension, which stated:

We will pay for direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location including the following necessary costs incurred to:

(a) Tear out and replace any part of Property Insured in order to gain access to the communicable disease;

(b) Repair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; and

(c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, Monitor, and assess the effects of the communicable disease.

In the definition section, the contract stated: "Communicable disease means any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human." "Communicable disease event" is "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location."

---

received no objection. We now take judicial notice. (Evid. Code, §§ 459, 452.)

Throughout the contract, terms are printed in boldface type. These boldface terms were separately defined in a later section of the contract. For ease of reading and because the boldface is not for emphasis, we have removed all bolding in the quoted excerpts.

4

Under the subsection titled "Business Income and Extra Expense Coverage," the policy stated:

> If a Limit of Insurance for Business Income and Extra Expense is shown in the Declarations, then we will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations during the period of restoration arising from direct physical loss or damage to property at a location, or within 1,000 feet of such location, caused by or resulting from a covered cause of loss.

The contract defines "covered cause of loss" to mean "risks of direct physical loss or damage not excluded or limited in this Coverage Form." The declarations stated plaintiffs had the following limits of insurance: $6 million for business real property, $1.6 million for business personal property, and $5 million for "business income, extra expense."[4]

## 2. *Beginning of the COVID-19 Global Pandemic and Plaintiffs' Tender to its Insurer*

In early January 2020, the outbreak of COVID-19 began a global pandemic. On March 19, 2020, California and Arizona governors issued directives closing or limiting restaurant service

---

[4] The policy also had a civil authority coverage extension that insured loss of business income due necessary suspension of operations caused by action of civil authority prohibiting access to a location. The provision stated the prohibited access must arise from "direct physical loss or damage to property other than at such location," and be "caused by or result from a covered cause of loss." We discuss this provision only in passing as our analysis is based on the communicable disease extension.

5

and closing bars, impacting the four restaurants at issue in this appeal. "In the ensuing months, California and Arizona state and local officials and health departments . . . issued several further orders and directives. The new orders include[d] restrictions on the use of property and mandate[d] that restaurants, hospitals, elder care facilities, and other businesses modify their premises to slow or stop the spread of COVID-19, and mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, and cleanup their premises, remove and dispose-of property that has been contaminated with COVID-19, and test for, monitor, and assess the effects of COVID-19 at their premises."

As a result of these health orders, plaintiffs "suffered hundreds of thousands of dollars in lost business income and extra expense, losses to their covered locations, loss avoidance and mitigation, removal of property, and loss of leasehold interest." In addition, Saddle Ranch Glendale was forced to close "as a result of its suspension of operations due to the physical loss or damage at its covered location, from civil authority shutdowns, and from the physical loss and damage to dependent properties like the adjacent sports stadiums, which attracted customers to its business."

On April 2, 2020, plaintiffs tendered Fireman's Fund "a claim for their losses—for damage to property insured at the restaurants, loss avoidance and mitigation expenses, costs to remove, mitigate, clean up, disinfect, test for, and prevent infection from COVID-19, and for their lost business income and extra expenses incurred from the suspension of their operations." Fireman's Fund denied their claims, concluding that plaintiffs had not suffered direct physical loss or damage, and that the

6

ongoing pandemic did not cause damage within 1,000 feet of the restaurant locations.

### 3.   *Present Lawsuit*

On September 24, 2020, plaintiffs sued Fireman's Fund for breach of contract and breach of the implied covenant of good faith and fair dealing, alleging Fireman's Fund wrongfully denied their claims.  Among the damages plaintiffs sought were "compensation for loss of insurance benefits, damage to property, costs for loss mitigation and avoidance, damages to leasehold interest, costs for removal and storage of property, and lost business income and extra expense, in an amount to be proven at trial."

Plaintiffs alleged that government-issued orders barred access to the Saddle Ranch restaurants and required plaintiffs at the Saddle Ranch locations to "mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, and/or cleanup their premises due to the COVID-19 pandemic—which the defendant Insurers admit is a 'global outbreak.' "

Plaintiffs stated, "The policy sold to Plaintiffs describes as covered 'physical loss or damage' the 'costs incurred to:  . . . Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the communicable disease.' "  Plaintiffs also asserted "insurers, and specifically Fireman's Fund, have admitted in other filings and matters that the need to disinfect or clean premises qualifies as 'physical loss or damage' as set forth in the Communicable Disease Coverage extension."

7

## 4. *Demurrer*

On October 26, 2020, Fireman's Fund filed its demurrer. Fireman's Fund asserted there was no breach of contract because plaintiffs had not suffered losses covered by the policy. First, Fireman's Fund argued plaintiffs cannot allege direct physical loss or damage necessary for coverage. Citing *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 779 (*MRI*), Fireman's Fund claimed "the presence of COVID-19 would not constitute physical damage to the Properties as it would not result in a distinct, demonstrable, physical alteration of property, or a permanent dispossession of property."

Fireman's Fund also argued the communicable disease extension was inapplicable because that "extension only covers direct physical loss or damage caused by or resulting from a covered communicable disease event, which 'means an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease *at such location*.' [Record cite.] (Emphasis added.) Despite these recitations of the Policy language, Plaintiffs fail to allege that COVID-19 was ever actually present at any of their Properties. And even if it were, there is no allegation of and no evidence that a public health authority ordered that any of Plaintiffs' Properties be evacuated, decontaminated, or disinfected due to an outbreak at the Properties of COVID-19." (Italics in original.)

## 5. *Plaintiffs' Opposition to the Demurrer*

Plaintiffs' opposition focused on the communicable disease coverage extension, which Fireman's Fund only briefly addressed.

Plaintiffs argued that the communicable disease coverage extension's language defines "direct physical loss or damage" to include necessary costs to "Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects of the communicable disease." Plaintiffs argued that Fireman's Fund's contention that COVID-19 could never physically damage properties rendered the communicable disease coverage extension illusory. Plaintiffs also distinguished the present case from those Fireman's Fund cited – the policies in the Fireman's Fund's cases did not have a communicable disease extension that expanded the meaning of direct physical loss or damage.

### 6. *Fireman's Fund's Reply*

In its reply, Fireman's Fund argued that "Plaintiffs try to characterize certain government orders and related guidance as orders issued by public health authorities that required Plaintiffs to decontaminate or disinfect their locations, but the plain language of these orders and purported orders makes clear they were issued to slow the spread of COVID-19 within the respective communities, and not because of an outbreak of COVID-19 at any of Plaintiffs' locations."

### 7. *Order Sustaining the Demurrer*

At a hearing on February 8, 2021, the court concluded plaintiffs failed to state a cause of action and could not amend to state one. The court stated the policy required a "direct physical loss" and adopted the definition of direct physical loss in *MRI*, as Fireman's Fund had urged. The court held that the communicable disease extension did not apply to a "pandemic situation."

9

The trial court entered judgment in favor of Fireman's Fund on April 12, 2021.  Plaintiffs appealed.

## *DISCUSSION*

Defendant's demurrer argued plaintiffs had no contractual right to coverage for their COVID-19 pandemic-related losses, and thus there was no breach of contract or breach of the implied covenant of good faith and fair dealing.  (See *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151, fn. 10 [no breach of contract or covenant of good faith where benefits were properly denied].)  We address below whether plaintiffs alleged sufficient facts to invoke coverage.

### 1.    *Standard of Review and Applicable Law*

" 'Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend.  [Citation.]  We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law.' " (*United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821, 829 (*United Talent Agency*).)  We solely review the ruling and are not bound by the trial court's reasons for sustaining the demurrer. (*Amy's Kitchen, supra,* 83 Cal.App.5th at p. 1067.)

"The principles governing the interpretation of insurance policies in California are well settled.  'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions.  [Citations.]  "If contractual language is clear and explicit, it governs."  [Citations.]  If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect " 'the

10

objectively reasonable expectations of the insured.' " [Citations.] Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer. [Citation.]' [Citation.] The 'tie-breaker' rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection." (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321 (*Minkler*).)

"To further ensure that coverage conforms fully to the objectively reasonable expectations of the insured, the corollary rule of interpretation has developed that, in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer. The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." (*Minkler, supra*, 49 Cal.4th at p. 322.) "The existence of a material ambiguity in the terms of an insurance policy may not, of course, be determined in the abstract, or in isolation. The policy must be examined as a whole, and in context, to determine whether an ambiguity exists." (*Ibid.*)

## 2.     *Plaintiffs Have Alleged Direct Physical Loss or Damage Under the Communicable Disease Coverage Extension*

Fireman's Fund's central argument is that plaintiffs cannot allege that they suffered direct physical loss or damage, an allegation essential to recovery under any part of the contract. Despite the insurance policy's "Definitions" section defining over 80 contractual terms, it does not define "direct physical loss or

11

damage." However, as plaintiffs point out, the communicable disease coverage extension indicates that direct physical loss or damage includes COVID-19 contamination that requires cleaning, disinfection, or other remediation at the insured property.

The communicable disease coverage extension, which we have quoted earlier in our opinion, states Fireman's Fund will pay for direct physical loss or damage to insured property from a communicable disease event at a location including costs incurred to (a) tear out and replace property, (b) repair and rebuild property, and (c) "Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects of the communicable disease."

Fireman's Fund argues: "the provision does not 'define' direct physical loss or damage at all—not for purposes of the extension itself or for the broad Policy as a whole. Instead, the extension states only that—in the event coverage is triggered by a communicable disease event—Fireman's Fund will pay for (1) direct physical loss or damage caused by or resulting from the communicable disease event, and (2) certain 'necessary costs incurred to,' among other things, 'mitigate, contain, remediate, treat, clean,' etc. the communicable disease. [Record citation.] Naturally, mitigation, containment, and the like are not themselves 'direct physical loss or damage' as Saddle Ranch asserts. Instead, the extension states that they may be reimbursable 'necessary costs' if they result from or are caused by a communicable disease event that also causes direct physical loss or damage to property."

Fireman's Fund misses the point. As our colleagues in the First District (analyzing the identical Farmer's Fund policy)

12

explained, "On reading the phrase 'direct physical loss or damage' as it appears in the extension, a reasonable layperson would assume that the phrase includes costs incurred for each of the three purposes specified in subparagraphs (a), (b), and (c)." (*Amy's Kitchen, supra,* 83 Cal.App.5th at p. 1070.) The "only plausible interpretation of subparagraph (c) of the communicable disease extension in this policy is that *the need to clean or disinfect infected or potentially infected covered property* constitutes 'direct physical loss or damage' of that property within the meaning of the policy." (*Amy's Kitchen,* at p. 1071, italics added.)

### 3. *Fireman's Fund's Argument that COVID-19 Contamination Cannot Cause Direct Physical Loss or Damage Is Unpersuasive*

Citing *MRI, supra,* 187 Cal.App.4th at page 779, Fireman's Fund relies on the same argument that was successful in the trial court, i.e., that the policy's direct physical loss or damage requirement means "a distinct, demonstrable, physical alteration of the property." Although some appellate opinions have defined direct and physical loss that way (e.g., *United Talent Agency, supra,* 77 Cal.App.5th at p. 830), the language in plaintiffs' policy is what controls. "An insurance policy must be construed in light of how a reasonable layperson would read its language, not how insurance-coverage lawyers might understand terms of art defined not by the policy but by caselaw." (*Amy's Kitchen, supra,* 83 Cal.App.5th at p. 1070.)

As Division Seven explained in *Marina Pacific* when it evaluated the identical Fireman's Fund's policy language, "Fireman's Fund's argument and the trial court's conclusion that the COVID-19 virus cannot cause direct physical loss or damage

13

to property are directly undermined by the policy's plain language establishing communicable disease coverage. Fireman's Fund asserts the insureds must allege an obvious physical alteration, for example, 'broken chairs, dented walls, or smashed windows,' to adequately allege direct physical loss or damage. Because it is undisputed the COVID-19 virus (or presumably any communicable disease) does not cause such damage, Fireman's Fund argues, it cannot cause property damage as defined in the policy." (*Marina Pacific, supra,* 81 Cal.App.5th at p. 112.) And yet, the policy's communicable disease event extension "explicitly contemplates that a communicable disease, such as a virus, can cause damage or destruction to property and that such damage constitutes direct physical loss or damage as defined in the policy. Construing the policy provisions together, as we must, this language precludes the interpretation that direct physical loss or damage categorically cannot be caused by a virus. (See Civ. Code, § 1641 ['[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other'].)" (*Marina Pacific*, at p. 112.)

The court in *Amy's Kitchen* was equally unimpressed with Fireman's Fund's argument. Treating "physical alteration as an additional condition of coverage, as Fireman's urges, would render subparagraph (c) illusory—both redundant and meaningless. Subparagraphs (a) and (b) address the situation in which the presence of a communicable disease leads to physical alteration of the insured's property, where property must be torn out, repaired, or replaced. If subparagraph (c) were construed to apply only if there is a physical alteration of the property, the provision would have no possible application not covered by

14

subparagraphs (a) and (b).  As asserted in a case cited by Fireman's, ' "the presence of the virus itself . . . [does] not constitute direct physical loss of or damage to property" ' as 'contaminated surfaces can be disinfected and cleaned.' [Citation.]  If that view is correct, the only possible explanation for including subparagraph (c) would be to expand the coverage to include the cost of mitigation and disinfection, which otherwise would not be covered."  (*Amy's Kitchen, supra,* 83 Cal.App.5th at pp. 1070–1071.)

Fireman's Fund cites *Best Rest Motel, Inc. v. Sequoia Ins. Co.* (2023) 88 Cal.App.5th 696, *Apple Annie, LLC v. Oregon Mutual Ins. Co.* (2022) 82 Cal.App.5th 919, *United Talent Agency, supra,* 77 Cal.App.5th 821, *Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc.* (2022) 77 Cal.App.5th 753, and *Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, arguing California courts have uniformly held that businesses cannot allege direct physical loss or damage resulting from the COVID-19 virus.  None of the California cases on which Fireman's Fund relies has addressed a policy containing a communicable disease coverage extension, like the extension at issue here.

Fireman's Fund also cites federal cases for support, including *Rialto Pockets, Inc. v. Beazley Underwriting Limited* (9th Cir., Apr. 20, 2022, No. 21-55196) 2022 WL 1172134, *Sandy Point Dental, P.C. v. Cin. Ins. Co.* (7th Cir. 2021) 20 F.4th 327, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.* (9th Cir. 2021) 15 F.4th 885, *Santo's Italian Café LLC v. Acuity Ins. Co.* (6th Cir. 2021) 15 F.4th 398, and *Oral Surgeons, P.C. v. Cincinnati Ins. Co.* (8th Cir. 2021) 2 F.4th 1141.  Not only do the insurance policies in these cases lack a communicable disease coverage

extension, but "the pleading rules in federal court are significantly different from those we apply when evaluating a trial court order sustaining a demurrer. . . . Unlike in federal court, the plausibility of the insureds' allegations has no role in deciding a demurrer under governing state law standards, which . . . require us to deem as true . . . facts alleged in a pleading—specifically here, that the COVID-19 virus alters ordinary physical surfaces . . . , making them dangerous and unusable for their intended purposes unless decontaminated." (*Marina Pacific, supra,* 81 Cal.App.5th at pp. 109-110.)

### 4. *Plaintiffs Have Alleged a Communicable Disease Event to Invoke Coverage*

Fireman's Fund also contends the communicable disease extension is not applicable because plaintiffs have not and cannot allege a communicable disease event.

The policy states, "Communicable disease event means an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." "Communicable disease means any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human." "Public health authority" is defined as "the governmental authority having jurisdiction over your operations relative to health and hygiene standards necessary for the protection of the public."

Here, plaintiffs alleged the existence of a global COVID-19 outbreak. The complaint goes on to assert the existence of a highly contagious virus's presence throughout the community, which we understand to include plaintiffs' restaurants. Plaintiffs' complaint also alleges: (1) orders from California and

16

Arizona governors, local officials, and health departments directed them to close bars and restrict restaurant service, and (2) "to mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, and/or cleanup their premises due to contamination by COVID-19." Fairly read, plaintiffs have alleged – and we are concerned only with allegations in this appeal – that a public health authority had ordered that their locations be evacuated, or at minimum, decontaminated and disinfected due to the outbreak of a communicable disease at their restaurants. We conclude plaintiffs have pleaded sufficient facts to show the existence of a communicable disease event.[5]

Fireman's Fund argues that there was no communicable disease event because public health authorities did not issue an order directly and singly to Saddle Ranch restaurants. Fireman's Fund insists statewide orders were insufficient to invoke coverage. We do not accept this narrow reading of the communicable disease coverage extension. (See *Minkler, supra*,

---

[5]    Eleven months after Division Seven filed its opinion in *Marina Pacific,* the social and legal significance of Presiding Justice Perluss's preamble to the opinion remains true: "For more than two years our understanding of COVID-19, the infectious disease caused by the SARS-CoV-2 virus and its many variants, has evolved. Today we think we know how it spreads, how to protect against it and how best to treat those who have it. Perhaps we do. But even so, when a pleading alleges facts sufficient to constitute a cause of action, what we think we know—beliefs not yet appropriately subject to judicial notice— has never been a proper basis for concluding, as a matter of law, those alleged facts cannot be true and, on that ground, sustaining a demurrer without leave to amend. Yet that is precisely what occurred here." (*Marina Pacific*, *supra*, 81 Cal.App.5th at pp. 98– 99, fn. omitted.)

17

49 Cal.4th at p. 322 ["in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection"].)

The definition of communicable disease event does not require that a particular restaurant be singled out. We observe the term "location" is not in boldface (and therefore has no special contractual meaning) in the definition of communicable disease event or in the communicable disease coverage extension. The policy states: "Words and phrases contained within this Coverage Form that appear in bold face have special meaning. When words or phrases that appear below in bold face do not appear in bold face in this Coverage Form, then those words or phrases are to be interpreted using their common meaning." Contrary to Fireman's Fund's insistence that we apply the defined term (which defines location as the legal parcel boundaries of the insured properties), we must apply the common meaning of "location" here because it was not bolded. Applying that common meaning, the definition simply requires that a public health order requiring evacuation, disinfection, or decontamination apply to plaintiffs' restaurants. That is the case with the allegations here.

At oral argument, Fireman's Fund cited *Amy's Kitchen* for support of its narrow interpretation of the communicable disease event extension. *Amy's Kitchen* concluded the extension applied only where the public health authority specifically ordered closure/decontamination of the insured location. (*Amy's Kitchen, supra,* 83 Cal.App.5th at pp. 1071–1072.) However, *Amy's Kitchen* did not analyze the meaning of "location," or acknowledge that "location" as used in the extension was not a bolded, defined term in the insurance contract. Instead, *Amy's Kitchen* cited

18

several federal cases, which analyzed communicable disease provisions with *different language* than that at issue here.  The policies in those cases required:  "an outbreak of a 'communicable disease' . . . at the insured premises" (*Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mutual Insurance Company* (7th Cir. 2022) 33 F.4th 417, 420), or "an actual illness at the insured premises" (*Dakota Girls, LLC v. Phila.Indem.Ins. Co.* (6th Cir. 2021) 17 F.4th 645, 648), or "the outbreak of a communicable disease at such location" (*Nguyen v. Travelers Cas. Ins. Co. of Am.* (W.D. Wash. 2021) 541 F.Supp.3d 1200, 1237).  The fourth federal case cited by *Amy's Kitchen* involved a comparable communicable disease extension, but the court's dismissal was based on the fact the plaintiff failed to allege that it was required to evacuate, decontaminate, or disinfect—the ruling was unrelated to whether government closure orders singled out the plaintiff's insured premises.  (*PS Business Management v. Fireman's Fund Insurance Co.* (E.D. La., Oct. 27, 2021, No. CV 21-1229) 2021 WL 4989870, at p. *3.)

After consideration of the language of the extension at issue in this appeal, we conclude the governmental orders need not have been specifically directed at the insured premises in order to trigger the extension.  As long as the closure/decontamination order applies to those premises, that aspect of the extension has been operational.

### *DISPOSITION*

The judgment is reversed and remanded with directions to vacate the order sustaining the demurrer to the first amended complaint without leave to amend, and to enter an order

19

overruling the demurrer.  Plaintiffs and appellants are awarded costs on appeal.


                                        RUBIN, P. J.

WE CONCUR:



        BAKER, J.



        MOOR, J.